1  Maureen P. Henry (State Bar Id. No. 012185)
2  **COLLINS, MAY, POTENZA, BARAN & GILLESPIE, P.C.**
   Chase Tower, Suite 2200
3  201 North Central Avenue
   Phoenix, Arizona 85004-0022
4  Telephone (602) 252-1900
5  Facsimile (602) 252-1114
6
   Attorneys for Branch Banking and Trust Company
7

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:  ) | **Proceedings Under Chapter 7** |
| ASHLEY TREVOR OPENSHAW and  ) | |
| DARITY SAEDIE OPENSHAW,  ) | **Case No. 2:09-bk-32468 RTB** |
| )  | |
| Debtors.  ) | **Contested Matter No. _____** |
| )  | |
| BRANCH BANKING AND TRUST CO.,  ) | |
| successor by merger to Liberty Mortgage  ) | |
| Corporation,  ) | **MOTION FOR TERMINATION AND** |
| Movant,  ) | **ANNULMENT OF THE AUTOMATIC** |
| )  | **STAY (2524 South El Paradiso, Unit 38,** |
| vs.  ) | **Mesa, Arizona 85202)** |
| ASHLEY TREVOR OPENSHAW and  ) | |
| DARITY SAEDIE OPENSHAW, Debtors,  ) | **Hearing Date and Time: Not set** |
| and BRIAN J. MULLEN, as Trustee,  ) | |
| Respondents.  ) | |
| )  | |

Pursuant to Bankruptcy Code Section 362 (a) and (d); Fed.R.Bankr.P 4001(a) and 9014;

and Local Rules of Bankruptcy Procedure 4001-1, Branch Banking and Trust Co., successor by

merger to Liberty Mortgage Corporation ("Bank"), by and through its attorneys, Collins, May,

Potenza, Baran, & Gillespie, P.C., hereby requests an order of this Court terminating and

annulling all stays and injunctions, including the automatic stays of 11 U.S.C. § 362(a) with respect to the following property:

> Building 7, Unit C, LAKEPARK DEVELOPMENT, UNIT ONE, SECOND AMENDED, according to Declaration of Horizontal Property Regime recorded in Docket 13749, page 49 and plat recorded in Book 213 of Maps, page 10, records of Maricopa County, Arizona, together with an undivided interest in and to the common elements, as set forth in said Declaration. [1]

This court has jurisdiction of this matter under 28 U.S.C. §§157 (b)(2)(G) and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(G) and 11 U.S.C. §362. The filing of this Motion commences a contested matter within the meaning of Fed.R. Bankr.P. 9014.

In support of its request for relief, the Bank herewith submits the attached Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.    Factual Background:**

1.   Pursuant to a Deed of Trust recorded in the Official Records of Maricopa County Recorder at 2007-0705353 on June 19, 2007 (the "Deed of Trust"), the Bank holds a valid and perfected first position lien on the Real Property to secure a promissory note ("Note") signed by the Debtors on or about June 14, 2007, in the original principal amount of $203,801.00. A copy of the Note and Deed of Trust are attached hereto as Exhibits "A" and "B" and are by this reference incorporated herein.

2.   The Debtors have defaulted on their monthly payments under the Note and are now past due for their May 1, 2009, payment and each monthly payment thereafter in the amount of $1,410.78.

---

[1] The above-described real property is commonly known as 2524 South El Paradiso, Unit 38, Mesa, Arizona 85202 and is hereinafter referred to as the "Real Property."

3.  As a result of the Debtors' default under the Note, the Bank has declared the Note immediately due and payable.

4.  As of the date of this filing of this Motion, the outstanding principal amount due under the Note is $199,516.13.  Arrearages as of January 8, 2010 were $13,331.74, and the payoff amount was $213,747.46.

5.  The Bank has delivered via regular mail the letter required by L.Bankr.R. 4002-1(b), and the certification required by the Local Rule is filed concurrently herewith.

6.  According to the Debtors' chapter 7 Individual Debtor's Statement of Intention dated filed in connection with this bankruptcy case, the Debtors have indicated an intention to surrender the Real Property to the Bank.

7.  The Bank is entitled to its reasonable attorneys fees and court costs for the collection of all amounts due under the Note.

8.  The Debtors value the Real Property in their Schedule A – Real Property as $149,500.00.

9.  The Bank has not obtained an appraisal of the Real Property but has no reason to dispute the Debtors' valuation of the Real Property which demonstrates that there is no value in the Real Property for the bankruptcy estate.

**B.  Legal Arguments and Authorities.**

11 U.S.C. §362(d) provides as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—
>
> (1)  for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2)  With respect to a stay of an act against property under subsection (a) of this section, if—

(A)   the debtor does not have an equity in such property; and

(B)   such property is not necessary to an effective reorganization…

The Bank is entitled to stay relief under each of the independent basis for relief set forth in 11 U.S.C. §362(d).[2]

### "Cause" exists to terminate the stay under 11 U.S.C. §362(d)(1).

If "cause" exists, a bankruptcy court "shall" lift the automatic stay. *In re Tuscon Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990). "Cause" includes the lack of adequate protection of an interest in property. 11 U.S.C. § 362(d)(1).

There is insufficient equity in the Real Property to adequately protect the Bank. Further, a debtor's failure to maintain regular payments to a secured creditor constitutes grounds to lift the automatic stay. *See, e.g., In re Hinchliffe*, 164 B.R. 45, 49 (Bankr. E.D. Pa. 1994) (stay lifted where debtors failed to make post-petition payments); *In re Kessler*, 76 B.R.434, 437-39 (Bankr. E.D. Pa. 1987) (secured creditor entitled to relief from stay where debtor failed to make post-petition mortgage payments*); In re Hinkle*, 14 B.R. 202, 204 (Bankr. E.D. Pa. 1981) (same).

The Bank has met its initial burden of showing a legally sufficient basis, or cause, for lifting the automatic stay. *See Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2nd Cir. 1990). Once cause is shown to exist, the Debtors must prove they are entitled to the protections afforded by the stay. *In re Duvar Apt., Inc.*, 205 B.R. at 200; *In re Eighty South Lake, Inc.*, 63 B.R. 501, 508 (Bankr. C.D. Cal. 1986),

---

[2] The subsections of Section 362(d) are independent and disjunctive. This means that the Court must lift the stay if The Bank prevails under either section 362(d)(1) or 362(d)(2). *In re Duvar Apt, Inc.*, 205 B.R. 196, 200 (BAP. 9th Cir. 1996).

*aff'd*, 81 B.R. 580 (Bankr. 9th Cir. 1987).[3]  The Debtors cannot meet this burden.  The stay should be lifted under 11 U.S.C. §362(d)(1).

<u>The Bank is entitled to relief under Section 362(d)(2) because there is no equity in the Real Property and the Real Property is not necessary to an effective reorganization.</u>

A creditor is entitled to relief from the automatic stay under Section 362(d)(2) when the debtor has no equity in the property and the property is not necessary for an effective reorganization.  11 U.S.C. §362(d)(2)(A), (B).  *See In re Dollar Associates*, 172 B.R. 945, 953 (Bankr. N.D. Cal. 1994).  The Ninth Circuit Court of Appeals has held that the proper definition of equity for the purposes of § 362(d)(2)(A) is the difference between the value of the property and all the encumbrances on it.  *In re Sun Valley Newspapers, Inc.*, 171 B.R. 71, 75 (Bankr. 9th Cir. 1994) *citing Stewart v. Gurley*, 745 F.2d 1194, 1196 (9th Cir. 1984).  The Debtors admit there is no equity in the Real Property for this bankruptcy estate.  (*See* Debtors' Bankruptcy Schedule A, Real Property).  Further, there is no reorganization in prospect.  This is a chapter 7 liquidation.  The Bank is entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(2).

WHEREFORE, the Bank requests the following relief:

a.      An Order of the Court granting relief from the automatic stays of 11 U.S.C. § 362(a) with respect to the real property commonly known as 2524 South El Paradiso, Unit 38, Mesa, Arizona 85202 and legally described as follows:

> Building 7, Unit C, LAKEPARK DEVELOPMENT, UNIT ONE, SECOND AMENDED, according to Declaration of Horizontal Property Regime recorded in Docket 13749, page 49 and plat

---

[3] The Debtor not only has the burden of going forward with the evidence but also the burden of ultimate persuasion.  *In re Certified Mortgage Corp.*, 20 B.R. 787, 788 (Bankr. M.D. Fla. 1982).  Further, the burden to prove the absence of cause is upon the debtor.  *See In re Ellis*, 60 B.R. 432, 435 (BAP 9th Cir. 1985) *(citing In Re Gauvin*, 24 B.R. 578 (BAP 9th Cir. 1982).  *See also In re Sun Valley Ranches, Inc.*, 823 F.2d 1376 (9th Cir 1987).

recorded in Book 213 of Maps, page 10, records of Maricopa County, Arizona, together with an undivided interest in and to the common elements, as set forth in said Declaration;

b.      An Order of the Court awarding the Bank its reasonable attorney fees and costs incurred herein; and

c.      Such other and further relief as the Court deems just under the circumstances of this case.

RESPECTFULLY SUBMITTED this **25** day of January, 2010.

COLLINS, MAY, POTENZA, BARAN & GILLESPIE, P.C.

*Maureen P Henry*

Maureen P. Henry
Attorneys for Branch Banking and Trust Company

Copy of the foregoing filed with the United
States Bankruptcy Court and mailed this
26th day of January, 2010 to:

Mr. Ashley Trevor Openshaw
Ms. Darity Saedie Openshaw
282 S. Jesse St.
Chandler, Arizona 85225
Debtors

Keith P. Smith, Esq.
Law Offices of Keith P. Smith
1 E. Camelback Rd., #550.
Phoenix, Arizona 85012
Attorneys for the Debtors

Brian J. Mullen, Esq.
P.O. Box 32247
Phoenix, Arizona 85064
Chapter 7 Trustee

_Cindy Taylor_

# EXHIBIT "A"

MIN # 100159989613369706

| Multistate | NOTE | FHA Case No |
| --- | --- | --- |

JUN 1 4 2007 [Date] 2524 South El Paradiso Unit #, Uint 39
Mesa, AZ 85202
[Property Address]

**1 PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns "Lender" means
Liberty Mortgage Corporation

and its successors and assigns
**2 BORROWER'S PROMISE TO PAY, INTEREST**
In return for a loan received from Lender, Borrower promises to pay the principal sum of Two Hundred Three
Thousand Eight Hundred One And Zero/100

Dollars (U S $ 203,801.00      ), plus interest, to the order of Lender Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of Six and one quarter
percent (     6.250 %) per year until the full amount of principal has been paid
**3 PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument " The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note
**4 MANNER OF PAYMENT**
(A) Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
August 01      , 2007      Any principal and interest remaining on the first day of July
2037      , will be due on that date, which is called the "Maturity Date."
(B) Place
Payment shall be made at 223 West Nash Street, Wilson, NC 27893
or at such place as Lender may designate in writing
by notice to Borrower
(C) Amount
Each monthly payment of principal and interest will be in the amount of U S $ 1,254 84      This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument
(D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of
this Note [Check applicable box]

☐Graduated Payment Allonge ☐Growing Equity Allonge ☐Other [specify]

**5 BORROWER'S RIGHT TO PREPAY**
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first
day of any month Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for
the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary If Borrower makes a
partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in
writing to those changes

FHA Multistate Fixed Rate Note - 10/95
-4R (0311)02
VMP Mortgage Solutions (800)521 7291
Page 1 of 2
Page 1 of 2

**6 BORROWER'S FAILURE TO PAY**

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **Four** percent ( **4 000%**) of the overdue amount of each payment

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest  Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default  In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults  This Note does not authorize acceleration when not permitted by HUD regulations  As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee

(C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law  Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor  "Presentment" means the right to require Lender to demand payment of amounts due  "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid .

**8 GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address

**9 OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note  Lender may enforce its rights under this Note against each person individually or against all signatories together  Any one person signing this Note may be required to pay all of the amounts owed under this Note

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note

_____ (Seal)
Ashley Trevor Openshaw  -Borrower

_____ (Seal)
Darity Saedie Openshaw  -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF
BRANCH BANKING AND TRUST COMPANY (Seal)
LIBERTY MORTGAGE CORPORATION  -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF

_____ (Seal)
BRANCH BANKING AND TRUST COMPANY  -Borrower

BY _____ (Seal)
APRIL J MYERS, ASSISTANT SECRETARY -Borrower

BY _____ (Seal)
JULIE M PALMER, VP  -Borrower

4R (0211) 02                    Page 2 of 2

# EXHIBIT "B"

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20070705353 06/19/2007 03 33
88033809-12-3-3-
ELECTRONIC RECORDING

**FIDELITY NATIONAL TITLE**
7/2 88033806
Return To

Prepared By

─────────── [Space Above This Line For Recording Data] ───────────

State of Arizona

FHA Case No

# DEED OF TRUST

MIN 10015996913368706

THIS DEED OF TRUST ("Security Instrument") is made on
The Grantor is Ashley Trevor Openshaw and Darity Saedie Openshaw, Husband and Wife

("Borrower"), whose address is 1960 N Keating Apt 134, Mesa, AZ 85202

The trustee is **FIDELITY NATIONAL TITLE**
P.O. BOX 82715 • PHOENIX, AZ 85064                    ("Trustee"), whose address is

The beneficiary is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns) MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS  Liberty Mortgage Corporation

, and

("Lender") is organized and existing under the laws of GEORGIA
has an address of 3720 Davinci Court, Suite 150, Norcross, GA  30092
Borrower owes Lender the principal sum of
Two Hundred Three Thousand Eight Hundred One And Zero/100
Dollars (U S $ 203,801.00                    )
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on July 01, 2037
This Security Instrument secures to Lender  (a) the repayment of the debt evidenced by the Note, with interest, and

FHA Arizona Deed of Trust with MERS - 4/96
Wolters Kluwer Financial Services
VMP®-4N(AZ) (0305).01
Page 1 of 8

Amended 4/02

Initials ATO
DSO

all renewals, extensions and modifications of the Note, (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the Security Instrument, and (c) the performance of Borrower's covenants and agreements under this Security Instrument and Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in Maricopa

County, Arizona

Parcel ID Number 302-76-104
which has the address of 2524 South El Paradiso Unit #, Uint 38 [Street]
Mesa [City], Arizona 85202 [Zip Code] ("Property Address"),

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be

VMP® 4N(AZ) (0303) 01    Page 2 of 8

amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

VMP6V-4N(AZ)(9703)01                    Page 2 of 8

Escrow No 88033806-HS
Title Order No 88033806

# EXHIBIT ONE

Building 7, Unit C, LAKE PARK DEVELOPMENT, UNIT ONE, SECOND AMENDED, according to Declaration of Horizontal Property Regime recorded in Docket 13749, page 49 and plat recorded in Book 213 of Maps, Page 10, records of Maricopa County, Arizona,

TOGETHER WITH an undivided interest in and to the common elements, as set forth in said Declaration

abandoned Property Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing

6  Condemnation  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument  Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal  Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments  Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto

7  Charges to Borrower and Protection of Lender's Rights in the Property.  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2  Borrower shall pay these obligations on time directly to the entity which is owed the payment  If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument  These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument  If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien  Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice

8  Fees  Lender may collect fees and charges authorized by the Secretary

9.  Grounds for Acceleration of Debt

   (a) Default  Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if
      (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
      (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument

   (b) Sale Without Credit Approval  Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St  Germain Depository Institutions Act of 1982, 12 U S C  1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary

(c) No Waiver  If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payment, Lender does not waive its rights with respect to subsequent events

(d) Regulations of HUD Secretary  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary

(e) Mortgage Not Insured  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument  A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary

10  Reinstatement  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument  This right applies even after foreclosure proceedings are instituted  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full However, Lender is not required to permit reinstatement if  (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument

11  Borrower Not Released, Forbearance By Lender Not a Waiver  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy

12  Successors and Assigns Bound, Joint and Several Liability, Co-Signers  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b)  Borrower's covenants and agreements shall be joint and several  Any Borrower who co-signs this Security Instrument but does not execute the Note  (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent

13 **Notices** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph

14 **Governing Law, Severability** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision To this end the provisions of this Security Instrument and the Note are declared to be severable

15 **Borrower's Copy** Borrower shall be given one conformed copy of the Note and of this Security Instrument

16 **Hazardous Substances** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection

NON-UNIFORM COVENANTS Borrower and Lender further covenant and agree as follows

17 **Assignment of Rents** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower This assignment of rents constitutes an absolute assignment and not an assignment for additional security only

If Lender gives notice of breach to Borrower (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument, (b) Lender shall be entitled to collect and receive all of the rents of the Property, and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower However, Lender or a judicially appointed receiver may do so at any time there is a breach Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full

18 Foreclosure Procedure If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law After the time required by applicable law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale Lender or its designee may purchase the Property at any sale

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein Trustee shall apply the proceeds of the sale in the following order, (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees, (b) to all sums secured by this Security Instrument, and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U S C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law

19 Release Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower Borrower shall pay any recordation costs

20. Substitute Trustee. Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law

21 Time of Essence Time is of the essence in each covenant of this Security Instrument

22 Mailing Addresses Borrower's mailing address is 1960 W Keating Apt 134
Mesa, AZ    85202                                    Trustee's mailing address is

23 Riders to this Security Instrument If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument [Check applicable box(es)]

[x] Condominium Rider                [ ] Growing Equity Rider          [ ] Other [specify]
[ ] Planned Unit Development Rider   [ ] Graduated Payment Rider

VMP® 4H(AZ) (0301) 01                        Page 7 of 8

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                     Ashley Trevor Openshaw         Borrower

_____     _____ (Seal)
                                     Darity Saedie Openshaw         Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                                     Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                                     Borrower

_____ (Seal)     _____ (Seal)
                       -Borrower                                     Borrower


STATE OF ARIZONA, Maricopa                                    County ss
    The foregoing instrument was acknowledged before me this 14TH DAY OF JUNE 2008
by Ashley Trevor Openshaw and Darity Saedie Openshaw


My Commission Expires  11-30-2010

                                        _____
                                        Notary Public

        SEAN TANGHE
        Notary Public - Arizona
        Maricopa County
        Expires 11/30/2010

# CONDOMINIUM RIDER

FHA Case No

THIS CONDOMINIUM RIDER is made this       day of
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned
("Borrower") to secure Borrower's Note ("Note") to Liberty Mortgage Corporation

("Lender") of the same date and covering the Property described in the Security Instrument
and located at  2524 South El Paradiso Unit 8, Unit 38
Mesa, AZ  85202

[Property Address]
The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as  Lake Park

[Name of Condominium Project]
("Condominium Project") If the owners association or other entity which acts for the
Condominium Project ("Owners Association") holds title to property for the benefit or use of
its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest

CONDOMINIUM COVENANTS In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows

A    So long as the Owners Association maintains, with a generally accepted insurance
carrier, a "master" or "blanket" policy insuring all property subject to the
condominium documents, including all improvements now existing or hereafter
erected on the Property, and such policy is satisfactory to Lender and provides
insurance coverage in the amounts, for the periods, and against the hazards Lender
requires, including fire and other hazards included within the term "extended

FHA Multistate Condominium Rider - 10/95
Wolters Kluwer Financial Services
VMP®-586U (0402) 01
Page 1 of 3                Initials

coverage," and loss by flood, to the extent required by the Secretary, then (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto

B   Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project

C   If Borrower does not pay condominium dues and assessments when due, then Lender may pay them Any amounts disbursed by Lender under this Paragraph C shall become additional debt of Borrower secured by the Security Instrument Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment



BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider

_____ (Seal)
Ashley Trevor Openshaw          -Borrower

_____ (Seal)
Darity Saedie Openshaw          -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

VMP®-586U (0402) 01              Page 3 of 3